IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 06-cv-01122-LTB

RITA A. PRETIGER,

        Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

        Defendant.
_____

ORDER
_____

Plaintiff, Rita A. Pretiger, appeals from the Social Security Administration ("SSA") Commissioner's final decision denying her application for supplement security income, filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral argument would not materially assist me in the determination of this appeal. After consideration of the parties' briefs, as well as the administrative record, I AFFIRM the SSA Commissioner's final order.

## I. STATEMENT OF THE CASE

Plaintiff seeks judicial review of the Commissioner's decision denying her application for supplemental security income protectively filed in November of 2002. [Administrative Record ("AR") 19, 51] The application was initially denied on September 20, 2001. [AR 39] An Administrative Law Judge ("ALJ") subsequently conducted an evidentiary hearing, and issued a written ruling on July 19, 2003, denying Plaintiff's application on the basis that she was not disabled because she retained the residual functional capacity to perform a significant range of

work at the medium level of exertion, which existed in significant numbers in the national economy (Step Five). [AR 311]   On October 8, 2003, the SSA Appeals Council vacated the ALJ's decision, and remanded the case for further proceedings. [AR 314]

After a *de novo* hearing on November 2, 2005, an ALJ again determined that Plaintiff was not disabled. [AR 405]   The ALJ found, in a written opinion dated January 24, 2006, that Plaintiff retained the residual functional capacity to perform a significant range of work at the light level of exertion, which existed in significant numbers in the national economy (Step Five). [AR 19, 26] On April 12, 2006, the SSA Appeals Council denied Plaintiff's administrative request for review of the ALJ's determination, making the SSA Commissioner's denial final for the purpose of judicial review. [AR 7] *See* 20 C.F.R. § 416.1481. Plaintiff timely filed her complaint with this court on June 13, 2006, in which she seeks review of the Commissioner's decision.

## II. FACTS

Plaintiff was born on March 31, 1960, and was 40 years old on the date of her alleged disability and 45 years old at the time of her hearing after the SSA Appeals Council remand. [AR 25-27]   She had a high school education and some additional college education. [AR 20, 341] She had no past relevant work history. [AR 20]   Plaintiff alleges that she became disabled on November 3, 2000, due to depression. [AR 51, 66]

Plaintiff's medical record is minimal as to her physical limitations.  On August 25, 2001, a consultive examiner diagnosed Plaintiff with neck pain not otherwise specified and left rotator cuff tendinitis. [AR 197]   The report concluded that Plaintiff was limited to carrying twenty pounds occasionally, and twenty pounds frequently as well. [AR 200]   An undated/unsigned RFC

assessment form in the record limits Plaintiff's ability to lift to 50 pounds occasionally. [AR 104]

As to Plaintiff's mental limitations, the record indicates that Plaintiff received fairly regular mental health treatment at the Spanish Peaks Mental Health Center ("SPMHC") between March 3, 2000 and August 19, 2002. [AR 131-192 & 235-268] During this time, Dr. Richard Madsen, Ph.D, performed a psychological consultative examination of Plaintiff in August 2001. [AR 193] Dr. Madsen assessed Plaintiff with major depression, recurrent moderate, chronic post-traumatic stress disorder, and a personality disorder. [AR 195] Dr. Madsen reported that Plaintiff "had difficulty relating to her peers, co-workers, supervisors, and the general public" and rated her Global Assessment of Functioning ("GAF") score at 55. [AR 195]

Also in August of 2001, a state agency non-examining physician, Dr. Ellen Ryan, M.D, opined that Plaintiff was moderately restricted in her ability to:  1) work in coordination with or proximity to others without being distracted; 2) complete a normal work day and week without interruptions, and perform at a consistent pace; 3) interact appropriately with the general public; 4) accept instructions and respond appropriately to criticism from supervisors; and 5) get along with co-workers or peers without distracting them or exhibiting behavioral extremes.  [AR 112-113]  In all other areas of mental functioning, Dr. Ryan determined that Plaintiff was not significantly limited or not significantly to moderately limited. [AR 112-113]  Dr. Ryan concluded that Plaintiff "can follow simple instructions, sustain ordinary routines and make simple work related decisions."  Moreover, although she "cannot work closely with supervisors and co-workers (especially men) and the public," she can "accept supervision and relate to co-workers if the contact is not frequent or prolonged." [AR 114-15]

3

On November 7, 2001, the medical director of SPMHC, Richard Pounds, M.D, indicated on a state form – completed in connection with Plaintiff's application for state welfare benefits (the "MED-9") – that Plaintiff's diagnosis was dysthymia, chronic major depression, recurrent, borderline intellectual functioning, and impulse control disorder not otherwise specified. [AR 271] Dr. Pounds certified that Plaintiff has been or will be disabled to the extent that she in unable to work at any job for twelve months or more. [AR 272] The following year, Dr. Jon Wescot, M.D., a psychiatrist at SPMHC, executed another MED-9 form, dated October 22, 2002, in which he certified that Plaintiff has been or will be disabled for twelve months or more. [AR 269]

The following year, on September 11, 2003, Dr. Carlos Rodriguez, Ph.D., a psychologist, certified on the state welfare MED-9 form that he believed Plaintiff has been or will be disabled for twelve months or more. [AR 297] His diagnosis was major depression, post traumatic stress disorder, and alcohol abuse in reported remission. [AR 296] Dr. Rodriguez again certified Plaintiff's disabled status on two subsequent MED-9 forms dated August 12, 2004 and September 19, 2005. [AR 294, 292] In addition, on September 22, 2005, Dr. Rodriguez completed a mental RFC evaluation form in which he opined that Plaintiff had marked or marked-to-extreme limitations in many areas of mental functioning, such as: the ability to understand and remember detailed instructions and the ability to accept instructions and respond appropriately to criticism from supervisors. [AR 298] Dr. Rodriguez further indicated that these limitations, at such severity levels, had been present since Plaintiff was initially examined by him in September of 2003. [AR 299]

At the hearing, Plaintiff testified that her depression makes her cry a lot and she feels worthless. [AR 411] At least 2 or 3 times a weeks she stays in bed, and she does not like to be

around people. [AR 411] She maintained that she has trouble concentrating and remembering. [AR 412] She further testified that she was seeing a therapist and taking medication for her depression. [AR 412]

Plaintiff alleged that she is unable to work due to poor motivation, excess sleep, and a lack of confidence due to depression. She claimed that she does not care if she is alive, and has poor short term memory and concentration; she reports feelings of uselessness, hopelessness, poor energy, anxiety and mood swings. Plaintiff's medical records indicate a long history of drug and alcohol abuse, although she testified to decreased but continued alcohol consumption, recent cessation of her daily marijuana use, and past periods of abstinence. [AR 23, 414-17]

### III. LAW

Title XVI of the Social Security Act provides benefits to individuals suffering from a long-term disability and who have income and resources below specified amounts. 20 C.F.R. § 416.110(a). A five-step sequential evaluation process is used to determine whether a claimant is disabled, which is generally defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§ 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

Step One is whether the claimant is presently engaged in substantial gainful activity. If she is, disability benefits are denied. *See* 20 C.F.R. § 416.920. Step Two is a determination whether the claimant has a medically severe impairment or combination of impairments as governed by 20

C.F.R. § 416.920(c). If the claimant is unable to show that her medical impairments would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits. Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. § 416.920(d). If the impairment is not listed, she is not presumed to be conclusively disabled. Step Four then requires the claimant to show that her impairment(s) and assessed residual functional capacity ("RFC") prevent her from performing work that she has performed in the past. If the claimant is able to perform her previous work, the claimant is not disabled. *See* 20 C.F.R. § 416.920(e)& (f).

Finally, if the claimant establishes a *prima facie* case of disability based on the four steps discussed, the analysis proceeds to Step Five where the Commissioner has the burden of proving that the claimant has the RFC to perform other work in the national economy in view of her age, education and work experience. *See* 20 C.F.R. § 416.920(g).

## IV. ALJ's RULING

The ALJ ruled that Plaintiff had not performed substantial gainful activity since the alleged onset of disability (Step One). [AR 26] The ALJ further determined that Plaintiff's cervical and lumbar degenerative disc disease, obesity, depression, post-traumatic stress disorder and personality disorder were severe, (Step Two) but that they did not meet or medically equal a listed impairment deemed to be so severe as to preclude substantial gainful employment (Step Three). [AR 26] As a result, the ALJ went on to find that Plaintiff has the RFC to perform a

significant range of light exertional work with restrictions related to her mental impairments. [AR 26] Specifically, the ALJ determined that Plaintiff:

> can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently. She can sit for at least 6 hours in and 8-hour workday, and can stand and/or walk for at least 6 hours in an 8-hour workday. She can only occasionally deal with co-workers, supervisors, and the general public, and is limited to work that does not involve complex tasks, being essentially limited to work at a specific vocational preparation level of 2 or less. [AR 23]

Because Plaintiff had "no past relevant work" (Step Four), the ALJ went on to determine – using Medical-Vocational Rule 20.20 as a framework for decision-making – that Plaintiff's RFC allows her the ability to perform a significant number of jobs in the national economy, including work as a small products assembler, collator operator, and mail sorter. [AR 26] As a result, the ALJ concluded that Plaintiff was not disabled at Step Five of the sequential process and, therefore, was not under disability as defined by the Social Security Act.

## V. STANDARD OF REVIEW

This court's review here is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001); *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000). Thus, the function of my review is "to determine whether the findings of fact . . . are based upon substantial evidence and inferences reasonably drawn therefrom; if they are so supported, they are conclusive upon [this] reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the

conclusion." *Campbell v. Bowen*, *supra*, 822 F.2d at 1521 (*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d. 842 (1971)).  I may not re-weigh the evidence or substitute my judgment for that of the ALJ.  *See Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991); *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987); *Cagle v. Califano*, 638 F.2d 219, 220 (10th Cir. 1981).  With regard to the application of the law, reversal may be appropriate when the SSA Commissioner either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards.  *See Winfrey v. Chater,* 92 F.3d 1017, 1019 (10th Cir. 1996).

## VI. ISSUES ON APPEAL

*A.  Assessment of Treating Physicians' Opinions (Dr. Pounds and Dr. Wescot)*

On appeal of the ALJ's ruling, Plaintiff claims that the ALJ erred when weighing the conflicting medical opinions in the course of assessing her RFC mental limitations.  Plaintiff first asserts that the ALJ did not properly weigh the opinions of her treating physicians at SPMHC, Drs. Pounds and Wescot.

The ALJ determined that Plaintiff's mental RFC was limited in that she could "only occasionally deal with co-workers, supervisors, and the general public, and is limited to work that does not involve complex tasks . . . ." [AR 23]  In making this determination, the ALJ concluded that much of Plaintiff's mental health treatment was "situational in nature" and that, with treatment, Plaintiff was able to "obtain some degree of symptom stability." [AR 21- 22]  The ALJ referred to numerous instances in Plaintiff's health records that indicated a decline in her mental health after a situational event – such as family issues or problems with her boyfriend – that

improved significantly after medication or therapy. The ALJ noted that around May of 2001, Plaintiff "experienced improvement in her mood, reported feeling hopeful, and was actively looking for a job." By June of 2001, Plaintiff reported no active symptoms of depression on medication. In September 2001, Plaintiff was deemed to have had reached maximum therapeutic benefit, in that she no longer required monthly therapy sessions and required only physician follow up. [AR 21]

The ALJ also found that Plaintiff's level of activity was not consistent with her alleged degree of mental health functioning. She remained able to do household chores, shopped once a week, visited her sister weekly and her daughter regularly. [AR 23] In addition, the ALJ noted that Plaintiff's inconsistent reports regarding both her drug and alcohol use "does not support a finding of credibility" and that "[w]hile she testified that her depressive symptoms are still present even when not using drugs or alcohol, her recurrent use makes it difficult to separate her substance abuse from her depressive symptoms." Furthermore, the ALJ noted that the "situational nature of much of her depressive symptoms tends to suggest that the addition of alcohol, a depressant, and marijuana could likely exacerbate her symptoms." [AR 23]

The ALJ further determined that despite her claimed inability to maintain employment based on the symptoms of her mental impairments, Plaintiff demonstrated good symptom control with medication and therapy. "She has participated in vocational rehabilitation, has expressed interest in getting part time work, and has reported that she has actively looked for work." [AR 23] Finally, the ALJ found that Plaintiff's minimal work history may indicate a lack or motivation to work. [AR 23]

As to the reports from Drs. Pound and Wescot, the ALJ specifically addressed the yearly MED-9 forms which "suggested that [Plaintiff] was unable to work for a period of 12 months or more due to a disabling physical or mental impairment." The ALJ found, with regard to the 2002 form, that "Dr. Pounds noted in November 2001 that [Plaintiff] has experienced little change in her condition since beginning treatment and had very poor impulse control, as well as chronic feeling of inadequacy and depression." However, "the medical records from [SPMHC] directly conflict with this reported lack of improvement, and during the period of time when this statement was completed, [Plaintiff] was only requiring medication follow-up, with no counseling[;] this level of care does not correlate with lack of improvement and a disabling degree of limitation resulting from psychologically based symptoms." [AR 24]

As to the 2002 form filled out by Dr. Wescot, the ALJ found that it noted a lack of improvement, and indicated that Plaintiff was disabled, "yet additionally, [Dr. Wescot's] medical notes document some degree of stability, and during much of the time [Plaintiff] was undergoing therapy and treatment at [SPMHC], her Global Assessment of Functioning, (GAF) score ranged from 55-60, suggesting only moderate symptoms or moderate difficulty in one of the following: social, occupational or school functioning." [AR 24] The ALJ further ruled, as to both Drs. Pounds and Wescot, that: 1) they failed to specify any functional limitations to support their opinions of disability; 2) their opinions regarding Plaintiff's ability to work involved statutory interpretation of the term "disabled"; and 3) giving their opinions controlling weight would improperly "confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability." [AR 24] In addition, the ALJ ruled that "[t]he lack of treatment notes provided . . . also fails to support their claims of a 12 month disability."

10

[AR 24]  Therefore, the ALJ specifically found that "these vague and unsupported statements of disability, which were made for a purpose other than Social Security disability evaluation, are entitled to no weight."  [AR 24]

Plaintiff argues that the ALJ erred in failing to fully assess these opinions, and that the reasons provided for the weight given are not supported by the record.  Furthermore, she maintains that the ALJ failed to explain why the conflicting opinions he relied upon were entitled to greater weight.  I find no error.

First, as noted by the ALJ, the determination of whether a claimant is disabled is reserved for the SSA Commissioner, and treating source opinions on the issue are never entitled to controlling weight as that would, in effect, confer upon them the authority to make the determination or decision about whether an individual is under a disability.  *See Howard v. Barnhart,* 379 F.3d 945, 949 (10th Cir. 2004).  The determination of issues reserved to the Commissioner, such as whether a plaintiff is disabled, will not be given any special significance or controlling weight.  20 C.F.R. § 416.927(e); SSR 96-5p; SSR 96-8p.  However, the ALJ must give reasons in the decision for the weight he gives a treating source opinion, and if the ALJ rejects the opinion completely, he must then give "specific, legitimate reasons" for doing so.  *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996) (*quoting Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987)).

The ALJ's ruling and reasons for rejecting Drs. Pounds' and Wescot's cursory opinion that Plaintiff was disabled, on a state form for the purpose of obtaining welfare benefits, are specific and legitimate and are sufficiently supported by the record.  Most significantly, my review

11

of the MED-9 forms reveals that the conclusion that Plaintiff is "disabled" by her mental impairments is not supported by any specified functional limitations or any other medical analysis or documentation. [AR 271, 269]   Furthermore, contrary to Plaintiff's assertion, the contemporaneous medical records from SPMHC are not consistent, at best, and in most cases directly conflict with such a conclusion.  For example, as the ALJ found, with record support, Dr. Pounds' November 2001 conclusion that Plaintiff was disabled and that she had experienced little change in her condition since beginning treatment, was contrary to the SPMHC records which indicated that Plaintiff was no longer in need of counseling, only follow-up treatment with her physician, in September of 2001. [AR 250]  As the ALJ ruled "[t]his level of care does not correlate with a lack of improvement and a disabling degree if limitation resulting from psychologically based symptoms." *See e.g. Castellano v. Secretary of Health & Human Servs., supra,* 26 F.3d at 1029 (affirming the ALJ's rejection of a treating physician's opinion when the physician's own office records did not support his later expressed opinion that plaintiff was totally disabled); *Doyal v. Barnhart,* 331 F.3d 758, 764 (10th Cir. 2003); *White v. Massanari*, 271 F.3d 1256, 1260 (10th Cir. 2001).

   I am unconvinced by Plaintiff's argument that the ALJ improperly picked and chose cursory clinic notes to make speculative inferences from the medical evidence.  My review of the SPMHC treatment notes, over the course of Plaintiff's treatment at SPMHC from March 2000 through August 2002, reveals ample evidence of situational stressors, within general symptom stability with treatment, that is inconsistent with Dr. Pounds' and Dr. Wescot's cursory and unsupported "disability" determination. [AR 141, 157, 161, 176, 249, 252, 260]

In addition, I also reject Plaintiff's argument to the extent she asserts that the ALJ failed to make a reasonable effort to re-contact Drs. Pounds and Wescot for clarification of the reasons for their opinion of disability, as required by SSR 96-5p.  As I have discussed, the record in this case provided ample evidence in support of the ALJ's decision to reject the "disability opinion" expressed by Drs. Pounds and Wescot.  It is the inadequacy of the record, not the rejection of the treating physician's opinion, that triggers the duty to re-contact that physician under SSR 96-5p. *White v. Massanari*, *supra*, 271 F.3d at 1261.

Finally, Plaintiff asserts that the ALJ failed to weigh the treating physician opinions against the opinions of the consultive physicians (Dr. Madsen and Dr. Ryan); specifically, she asserts that the ALJ failed to discuss to what extent the consultive opinions are *more* consistent with the evidence than the opinions of the treating physicians. *See Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th 2004).   The ALJ here, after setting forth the underlying reasoning, gave the "disability" opinions of Dr. Pounds and Wescot no weight – as a result, a weighing against the remaining evidence is unnecessary. *See generally Howard v. Barnhart,* 379 F.3d 945, 947 (10th Cir. 2004)("[w]hen the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened").

## B. *Assessment of State Agency Physician's Opinion (Dr. Ryan)*

Plaintiff next argues that the ALJ erred when addressing the opinion of Dr. Ryan, a state agency non-examining consultant, when assessing Plaintiff's RFC mental limitations. When determining that Plaintiff could "only occasionally deal with co-workers, supervisors, and the general public, and is limited to work that does not involve complex tasks," the ALJ found such

restrictions were "fairly consistent with the opinion of the State agency psychological consultant who reviewed the record initially and also noted moderate limitations in the areas of social interaction and concentration, persistence or pace." [AR 23]  The ALJ further determined that the RFC restriction that prevents Plaintiff from performing complex tasks "substantially encompasses those additional recommended limitations to the extent that these limitations can be reasonably supported by evidence in the record." [AR 23-24]  Finally, the ALJ also ruled that the mental RFC limitations were consistent with the limitations recommended by Dr. Madsen, who performed a psychological consultative mental status examination, and determined that Plaintiff had "difficulty relating to co-workers, supervisors, and the general public." [AR 23]

In a mental RFC assessment form dated August of 2001, Dr. Ryan opined that the "evidence indicates that [Plaintiff] can follow simple instructions, sustain ordinary routines and make simple work related decisions.  [She] cannot work closely with supervisors and co-workers (especially men) and public, [but she] can accept supervision and relate to co-workers if contact is not frequent or prolonged." [AR 114-15]   Dr. Ryan indicated that Plaintiff was moderately limited in several mental activities consistent with her conclusion.

Plaintiff maintains that the ALJ failed to explain why his RFC finding is not "totally consistent" with Dr. Ryan's opinion and the reasons for not giving it full weight.  However, my review of the ALJ's ruling is that the limitations in the assessed RFC related to Plaintiff's mental impairments is consistent with Dr. Ryan's RFC assessment.  The ALJ's indication that his ruling was "fairly consistent" with the opinion of Dr. Ryan which "noted moderate limitations in the areas of social interaction and concentration, persistence or pace" is indicative of the appreciable weight given to that opinion.

*C. Assessment of Examining Physician's Opinion (Dr. Rodriguez)*

Finally, Plaintiff contends that the ALJ also failed to properly weigh the RFC opinion provided by Dr. Rodriguez, an examining physician, related to her mental functioning. Dr. Rodriguez examined Plaintiff three times in a period of two years, from September 2003 through September 2005, in connection with Plaintiff's MED-9 forms for state welfare benefits. [AR 296, 294, 292]  On September 22, 2005, Dr. Rodriguez also completed a mental RFC evaluation in which he opined that Plaintiff had marked or marked-to-extreme limitations in numerous areas of mental functioning. [AR 298]

The ALJ ruled that "although Dr. Rodriguez completed an evaluation of [Plaintiff's] mental residual functional capacity, documenting marked to extreme limitations in most areas of functioning, the [Plaintiff's] treatment notes and her activity level do not support such an extensive degree of mental health limitations."  "Furthermore, the level of intervention offered to [Plaintiff] does not support such a restrictive lifestyle, and [Plaintiff] has not been offered any inpatient care, as would be expected if [Plaintiff] had marked to extreme level of difficulty throughout all areas of psychological functioning" as was indicated in Dr. Rodriguez's mental RFC assessment. [AR 24]  As a result, the ALJ gave no weight to his opinions regarding Plaintiff's functional limitations.

Plaintiff does not directly challenge the ALJ's rejection of Dr. Rodriguez's opinion related to Plaintiff's level of mental functioning, or the sufficiency of the evidence, but rather maintains that ALJ failed to express adequate reasons and analysis for such rejection.  However, I conclude that, as with the ALJ's assessment of Drs. Pounds and Wescot, the reasons given were sufficient

and supported by the record.  *See Doyal v. Barnhart, supra,* 331 F.3d at 764 (finding that substantial evidence supported the ALJ's rejection of a physician's opinion based on its inconsistency with the evidence as a whole).

Although much of the evidence regarding Plaintiff's mental functioning and the resulting limitations on her RFC was conflicting, I conclude that the ALJ, as he must, sufficiently weighed all the evidence, provided sufficient and specific reasons for the weight he afforded that evidence, and reached his decision.  *See Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994)("[i]n reviewing the record to make the substantial evidence determination, [the court] may not re-weigh the evidence nor substitute our judgment" for the Commissioner's).

Accordingly,  IT IS ORDERED that the Commissioner's decision is AFFIRMED.

Dated:  June   25  , 2007 in Denver, Colorado.

                                                          BY THE COURT:

                                                             s/Lewis T. Babcock
                                                          LEWIS T. BABCOCK, JUDGE